IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NELSON EDWARD DUSENBERY, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-CV-619-O |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| Respondent. | § | |

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Nelson Edward Dusenbery, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID), against the director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

In November 2015 in Hood County, Texas, Case No. CR13291, Petitioner was charged in a multi-count indictment with continuous sexual abuse of a child younger than 14 years of age, aggravated sexual assault of a child younger than 14 years of age, and indecency with a child. Clerk's R. 18–21, ECF No. 23-3. At trial, the state proceeded only on count one, alleging continuous sexual abuse of a child, and a jury found Petitioner guilty and assessed his punishment at life imprisonment. Reporter's R. 7, vol. 4, ECF No. 23-12; Clerk's R., 33, 37, ECF No. 23-3. Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. Electronic R., ECF No. 23-1. This federal habeas petition challenging his conviction followed.

The state appellate court briefly summarized the facts of the case as follows:

> Although not related to them, [Petitioner] was left in charge of minor sisters Lean09,3 the complainant, and L.D. (the girls) after his girlfriend (and their mother) was arrested and ultimately convicted and sentenced to prison for an out-of-state murder. At the time of their mother's arrest, Lean09 was nine years old, and L.D. was thirteen years old. The girls lived with [Petitioner] in Tarrant County and then Hood County.

> When Lean09 was a teenager, she told L.D. that [Petitioner] had sexually abused her. The girls confronted him together and warned that they would report him if it happened again. Soon after that conversation, when L.D. was seventeen years old, she moved out of the Hood County home to live with her boyfriend near Beaumont, and the sexual abuse "got worse" for Lean09. At the end of July 2015, [Petitioner] tried to get Lean09 to have sexual intercourse with him again. She refused, punched him, and called L.D. to come get her. A few days after Lean09 left Hood County with L.D., the girls reported [Petitioner]'s sexual abuse to Hood County law enforcement, who directed Lean09 to call [Petitioner] and then recorded the telephone conversation between [Petitioner] and Lean09 with the girls' consent (recorded phone call).

> Lean09 also had a complete examination at Cook Children's Hospital and a forensic interview at the Children's Advocacy Center.

> Hood County law enforcement arrested [Petitioner] the day after the recorded phone call, and the grand jury ultimately indicted him on charges of continuous sexual abuse of a child and several related counts. After hearing testimony from the girls, the Hood County investigator in charge of the case, the nurse who examined Lean09 at the hospital, and [Petitioner], and after listening to the recorded phone call and hearing about emails [Petitioner] sent Lean09, the jury found him guilty of continuous sexual abuse of a child.

Mem. Op. 2 –4, ECF No. 24-2.

## II. ISSUES

Petitioner raises the following grounds for relief, verbatim (**in the quotes below, as well as all following quotes in this opinion, any spelling, grammatical, and/or punctuation errors are in the original**):

      (1)     The government, its officers, law enforcement, courts/judges and other

2

persons committed crimes, state and federal, and violated rules, code and procedure that violated due process 5th and 14th Amen. and equal protection of laws rights and guarantees;

(2)     The government and courts have withheld evidence that no crime was committed and mitiagating evidence that if presented at trial no jury would have convicted Petitioner thus resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law violating due process as determined by the Supreme Court;

(3)     There is legally sufficient evidence to support the claim of prosecutor misconduct at the pre-trial, trial and post trial stages that violated 14th Amen. U.S. Const. due process and clearly established SCOTUS law and Tx. Penal Code, that void the conviction;

(4)     Petitioner challanges the jurisdiction granted by grand jury proceedings. There are no records of a grand jury proceeding found in the trial courts docket sheet or elsewhere and the government committed aggrevated perjury in the indictment thus voiding the conviction and violating due process and SCOTUS law;

(5)     There was legally insufficient evidence to support the verdict and subsequent judgment of conviction. The state did not prove every element of the charged crime as in the indictment and had trial counsel challenged the sufficiency of evidence no conviction would have occured;

(6)     Defense counsel was ineffective, incompetent, inert and caused substantial prejudice to occure at pre trial, trial and post trial that rendered the proceedings unfair violating U.S. Const. Amend. 5th, 6th and 14th and due process;

(7)     The voir dire and trial jury were tainted with biased and prejudiced jurors and the state and trial court committed jury misconduct and tamporing, violating U.S. Const. Amend. 6th and 14th "due process" and "equal protection of laws" rights;

(8)     The trial court judge had judicial bias towards Petitioner thus rendering an unfair trial in an unfair tribunal, thus violating the "due process" clause and "equal protection of laws" rights of the U.S. Const. 14th Amend.;

(9)     There was information known to the court at pre-trial and trial sufficient to raise doubts about the defendant's competency, therefor requiring a Pate hearing. The court was under legal obligation to order a Pate hearing, yet it

3

failed to do so, thus violating state and federal SCOTUS clearly established law, and "due process" and equal protection of law" rights see U.S. Const. Amend. 14th;

(10)     The states main witness failed to take the oath to tell the truth by refusal and testified while intoxicated with narcotics, she was a child at the time. These actions violated the U.S. Const. 14th Amend. "due process" and "equal protection of laws" rights.

Pet. 6–15, ECF No. 1. Petitioner's claims are multifarious and addressed, where appropriate, as thoroughly as practical and to the extent exhausted in the state courts.

## III.  RULE 5 STATEMENT

Respondent believes that Petitioner has exhausted his state-court remedies as he interprets the claims and that the petition is neither barred by the statute of limitations nor subject to the successive-petition bar. Resp't's Answer 5, ECF No. 21.

## IV.  EXHAUSTION AND PROCEDURAL DEFAULT

State prisoners seeking federal habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when both the factual as well as the legal substance of the federal habeas claim has been presented to the highest court of the state, in this case the Texas Court of Criminal Appeals, in a procedurally proper manner on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842–48 (1999); *Fisher,* 169 F.3d at 302; *Carter v. Estelle,* 677 F.2d 427, 443 (5th Cir. 1982).

Under his fourth ground,

Petitioner challanges the jurisdiction granted by grand jury proceedings. There are no records of a grand jury proceeding found in the trial courts docket sheet or elsewhere and the government committed aggravated perjury in the indictment thus voiding the conviction and violating due process and SCOTUS law.

4

Pet. 7, ECF No. 1. Although Petitioner cites the Court to his amended brief on appeal and "PDR records" in support of the claim, having reviewed the brief and the petition for discretionary review, the Court finds no point of error or issue therein sufficiently corresponding to this jurisdictional claim. Appellant's Br., ECF No. 23-26; Pet. for Discretionary Review, ECF No. 24-18. Therefore, the claim raised for the first time in this federal petition is unexhausted for purposes of federal habeas review. *See* 28 U.S.C. § 2254(b)(1)(A). Under the Texas abuse-of-the-writ doctrine, however, Petitioner cannot now return to state court for purposes of exhausting the claim. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a)–(c) (West, Westlaw through legislation effective May 19, 2021, of the 2021 Legis. Sess.). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Accordingly, federal habeas review of the claim is barred unless Petitioner can demonstrate cause for the default and actual prejudice or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice–*i.e.,* that he is actually innocent of the offense for which he was convicted. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such showing not having been demonstrated by Petitioner, ground four is unexhausted and procedurally barred from the Court's review.

Additionally, a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. *E.g., Beard v. Kindler,* 558 U.S. 53, 55 (2009). Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman,* 501 U.S. at 729; *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999). "This doctrine ensures that federal courts give proper respect to state procedural

5

rules." *Glover v. Cain,* 128 F.3d 900, 902 (5th Cir. 1997). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley,* 541 U.S. 386, 392 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman,* 501 U.S. at 731–732. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. *Davila v. Davis,* 137 S. Ct. 2058, 2064 (2017).

Under his third ground, Petitioner alleges that

[t]here is legally sufficient evidence to support the claim of prosecutor misconduct at the pre-trial, trial and post trial stages that violated 14th Amen. U.S. Const. due process and clearly established SCOTUS law and Tx. Penal Code, that void the conviction

Pet. 7, ECF No. 1.[1] Petitioner raised the claim on direct appeal, Appellant's Br. 38–46, ECF No. 23-16, and the appellate court addressed the claim as follows:

[Petitioner] complains of alleged prosecutorial misconduct both at trial and outside of trial, including criminal activity; witness intimidation; knowing reliance on nonexistent, false, and perjured evidence; and improper argument. [Petitioner] did not preserve any of his complaints of prosecutorial misconduct or improper argument in the trial court; he therefore forfeited them. We note that review of the record yielded no evidence that the prosecutorial team engaged in criminal activity, witness intimidation, or knowing reliance on nonexistent, false, or perjured evidence.

---

[1]According to Petitioner,

[t]he prosecutor destroyed evidence, threatened a witness, lied in court and in the appeal 72 times, committed crimes, committed theft, fabercated evidence, aided in the intoxication with narcotics of the states main witness a child at trial, attempted capital murder of Petitioner, federal wire fraud, tampered with physical evidence, obstructed justice, criminal conspiracy, abuse of official capacity, exploitation of a child, social security fraud, engaging in a continuing criminal enterprise.

*Id.* at 7.

Mem. Op. 24–25, ECF No. 24-2 (citations omitted).

Under his seventh ground, Petitioner claims that

[t]he voir dire and trial jury were tainted with biased and prejudiced jurors and the state and trial court committed jury misconduct and tamporing, violating U.S. Const. Amend. 6th and 14th "due process" and "equal protection of laws" rights.

Pet. 12–13, ECF No. 1. Petitioner raised the claim on direct appeal, Appellant's Br. 29–37, ECF No.

23-16, and the appellate court addressed the claim as follows:

[Petitioner] complains about jury selection and the seated jury, and he includes complaints about the state of the appellate record regarding voir dire. [Petitioner] forfeited his jury selection complaints by not raising them at trial. Also, this court has already resolved [Petitioner]'s complaints about alleged deficiencies in the appellate record against him.

Mem. Op. 24, ECF No. 24-2 (citations omitted).

And, under his tenth ground, Petition claims that

[t]he states main witness failed to take the oath to tell the truth by refusal and testified while intoxicated with narcotics, she was a child at the time. These actions violated the U.S. Const. 14th Amend. "due process" and "equal protection of laws" rights.

Pet. 15–16, ECF No. 1. Petitioner raised the claim on direct appeal, Appellant's Br. 16–19, ECF No.

23-16, and the appellate court addressed the claim as follows:

[Petitioner] complains that Lean09 did not give an oath to tell the truth before testifying at trial. The record shows that Lean09 was sworn in along with her sister, Investigator Young, and another potential witness who ultimately did not testify. [Petitioner] alleges, however, that Lean09 did not raise her hand or speak when the trial court swore in the four potential witnesses simultaneously. [Petitioner] did not bring his complaint to the trial court's attention.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. A reviewing court should not address the merits of

7

an issue that has not been preserved for appeal.

> [Petitioner] did not object in the trial court that Lean09 did not raise her hand or recite the oath; he therefore failed to preserve error.

Mem. Op. 22–23, ECF No. 24-2 (citations omitted).

Texas's contemporaneous-objection rule provides that a party must make a timely, specific objection to preserve error for appeal. *See* TEX. R. App. P. 33.1(a)(1)(A); *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). The state court clearly relied upon a firmly established and regularly followed state procedural rule to deny the claims. *See* TEX. R. App. P. 33.1(a)(1)(A); *Dowthitt v. Johnson,* 230 F.3d 733, 752 (5th Cir. 2000) (recognizing that the Texas contemporaneous-objection rule, which requires a timely objection to preserve error for appeal, is strictly and regularly applied, and is therefore an adequate state procedural bar to federal review). Accordingly, federal habeas review of the claims is barred unless Petitioner can demonstrate cause for the default and actual prejudice or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice–*i.e.,* that he is actually innocent of the offense for which he was convicted. *Coleman,* 501 U.S. at 750. Such showing not having been demonstrated by Petitioner, grounds three, seven, and ten are procedurally barred from the Court's review.

## V.  STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the

state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter,* 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191–92 (2018).

## VI.  DISCUSSION

### A.  Grounds One and Two

Under his first ground, Petitioner alleges that

> [t]he government, its officers, law enforcement, courts/judges and other persons committed crimes, state and federal, and violated rules, code and procedure that violated due process 5th and 14th Amen. and equal protection of laws rights and guarantees.

Pet. 6, ECF No. 1.

In support, Petitioner provides the following supporting facts:

The stated actors acted in collusion to murder Petitioner and aquire his assets, believed to be 3.1 million dollars. The evidence demonstrates the crimes began pre arrest and have continued to date. The actors have sought to cover and destroy evidence and other actors have joined the continuing criminal enterprise to suppress these crimes.

*Id.* As evidentiary support, he cites the Court to

see and attach and make a part of this ground thru adoption the complete record, information, citations, exhibits and all other material or citations stated of the following records: Exhibit [003-08-16-2019] and found at the complete complaint record filed 09/09/2019 U.S.D.C. Southern Dist. Houston Div. No. 4:19-CV-04267; amended brief filed 06/12/2017, reply brief filed Sept. 11, 2017 and supplemental brief filed 10-27-2017 2nd Court of Appeals Cause No. 02-16-00125-CR, see also the complete record of this case.

*Id.*

Under his second ground, Petitioner alleges that

[t]he government and courts have withheld evidence that no crime was committed and mitiagating evidence that if presented at trial no jury would have convicted Petitioner thus resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law violating due process as determined by the Supreme Court.

*Id.*

In support, Petitioner provides the following supporting facts:

Petitioner has presented evidence to the courts and state demonstrating the suppressed evidence, destroyed evidence and facts withheld from the jury and court. The 2nd Ct. of Appeals and Tx. Ct. of Crim. Appeals failed to and unreasonably applied clearly established federal law both U.S. Supreme Ct. and U.S. Const. law they also unreasonably ignored Petitioner's facts of the case that resulted in a decision that was based on a unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Thus violating 4th Amen. due process and U.S.S.Ct. law.

*Id.*

As evidentiary support, he cites the Court to

see and attach and make a part of this ground thru adoption the complete record of this case, Cause No. CR13291, Cause No. 02-16-00125-CR 2nd Ct. Appeals FTW, Tx, Cause No. PD-0786-18 and No. WR-90,009-01 Ct. Crim. Appl. Austin Tx; Cause No. 1:19-CV-02716 U.S.D.C. DC; Cause No. 4:19-CV-04267 U.S.D.C. South Houston Div. and Cause No. 20-20045 5th Cir. U.S.Ct. Appeals at Louisiana. The above information is to be adopted into all grounds of this petition and made a complete part of.

*Id.*

It is not the job of this Court to comb or scour the records to locate evidence supporting Petitioner's conclusory allegations. *See Perez v. Johnson,* 122 F.3d 1067, 1997 WL 464599, at *1 (5th Cir. Oct. 14, 1997) (citing *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994)) (explaining that courts are not required to "scour the record for factual issues that might support a pro se litigant's position; it is that litigant's obligation to direct the court's attention to the relevant evidence").[2] *See also Ross v. Estelle,* 694 F.2d 1008, 1011–12 (5th Cir. 1983) (providing "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").  Petitioner is not entitled to relief under his first and second grounds.

### B.  Ground Five

Under his fifth ground, Petitioner claims

[t]here was legally insufficient evidence to support the verdict and subsequent judgment of conviction. The state did not prove every element of the charged crime as in the indictment and had trial counsel challenged the sufficiency of evidence no conviction would have occured.

Pet. 11, ECF No. 1. According to Petitioner, the prosecutor even admitted that he did not prove every

---

[2]The Court also notes that to the extent grounds one and two were raised for the first time in Petitioner's petition for discretionary review and/or in this federal petition, the claims are unexhausted for purposes of federal habeas-corpus review. *See* 28 U.S.C. § 2254(b)(1)(A); *Castille v. Peoples,* 489 U.S. 346, 351 (1989); *Myers v. Collins,* 919 F.2d 1074, 1076 (5th Cir. 1990).

element of the offense (anus to penis contact) in his closing argument.[3] *Id.*; Reporter's R. 262, ECF No. 23-13.

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *See Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir. 1990). It is within the sole province of the jury to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh evidence in drawing inferences from the facts. *United States v. Millsaps,* 157 F.3d 989, 994 (5th Cir. 1998). Courts do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999). Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Petitioner raised a sufficiency-of-the-evidence claim on direct appeal, Appellant's's Br.

---

[3] Specifically, the prosecutor stated:

> We proved every one of these elements, save one. She did not have the courage to tell you about the defendant trying to penetrate her anally, she didn't tell you that, but she told the nurse that, and that nurse's report is in evidence here. She impressed upon [Lean09] the importance of telling the truth. You have that report, you can refer to it, it's State's Exhibit 1, and that nurse's report proves that part of the case as well.

Reporter's R. 262, ECF No. 23-13.

50–54, ECF No. 23-16, and, applying the *Jackson* standard and relevant state law, the appellate court, in the last reasoned opinion on the issue, addressed the claim as follows:

> [Petitioner] contends that the evidence was insufficient to support his conviction, but he focuses on the conflicts in the evidence, its circumstantial nature, and its alleged inadmissibility. The count in the indictment alleging continuous sexual abuse of a child under fourteen years old charged:

> > [D]uring a period that was more than 30 days in duration, to wit: from on or about November 19, 2008, through November 18, 2014, when [Petitioner] was 17 years of age or older, [he] did then and there commit two or more acts of sexual abuse against [a child] younger than 14 years of age, namely:

> > Aggravated Sexual Assault, by intentionally or knowingly causing the female sexual organ of "Lean09" (pseudonym), a child who was then younger than 14 years of age who was not [his] spouse . . . [,] to contact [his] penis;

> > Aggravated Sexual Assault, by intentionally or knowingly causing the anus of "Lean09" (pseudonym), a child who was then younger than 14 years of age who was not [his] spouse . . . [,] to contact [his] penis;

> > Aggravated Sexual Assault, by intentionally or knowingly causing the mouth of "Lean09" (pseudonym), a child who was then younger than 14 years of age who was not [his] spouse[,] to contact [his] penis;

> > Indecency With a Child, by intentionally, with the intent to arouse or gratify [his] sexual desire . . . , engage in sexual contact by touching the female sexual organ of "Lean09" (pseudonym), a child who was then younger than 14 years and not [his] spouse . . . , with [his] hand; [and/or]

> > Indecency With a Child, by intentionally, with the intent to arouse or gratify [his] sexual desire . . . , engage in sexual contact by causing "Lean09" (pseudonym), a child who was then younger than 14 years and not [his] spouse, to touch [his] penis with her hand[.]

> **A.   We Consider All Evidence—Direct, Circumstantial, Properly Admitted, and Improperly Admitted—When Assessing Its Sufficiency to Support**

13

a Conviction.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence, even improperly admitted evidence, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard gives full play to the trier of fact's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

The trier of fact is the sole judge of the weight and credibility of the evidence. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.

**B.**   **A Defendant May Be Convicted of Continuous Sexual Abuse of a Child if He Commits Two Acts of Sexual Abuse in a Period of Thirty or More Days, and the Jurors Do Not Have to Agree on Which Two Acts He Committed or on When He Committed Them Within that Period.**

Section 21.02 of the Texas Penal Code provides in relevant part,

(b)   A person commits an offense if:

    (1)   during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

    (2)   at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age . . . .

(c)   For purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:
. . .

14

(2)   indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child;

(3)   sexual assault under Section 22.011; [or]

(4)   aggravated sexual assault under Section 22.021[.] . . .

(d)   If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.  The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

A complainant's uncorroborated testimony of sexual abuse suffered as a child, standing alone, can support a conviction.

**C.   Lean09 Testified About Several Acts of Sexual Abuse Committed by [Petitioner] over a Multiyear Period Before She Turned Fourteen Years Old.**

After the girls' mother's arrest, [Petitioner] and the girls initially lived in the Fort Worth home on Alta Mesa Drive that they had shared with her. They then moved to two successive homes in Hood County. Lean09 testified that various acts of sexual abuse occurred in each home. She stated:

•   The first incident happened when Lean09 was nine years old and in the living room of the home on Alta Mesa. [Petitioner] exposed himself and told her to feel his penis, and she complied;

•   That same conduct occurred a few more times in that living room and in his bedroom;

•   [Petitioner] and the girls moved to a rent house in Granbury when Lean09 was around ten or eleven years old and stayed about a year;

•   The "[s]ame kind of things" happened in [Petitioner]'s bedroom in that house—Lean09 touched his penis with her hand, [Petitioner]

15

touched her chest, and he touched her genitals with his hand and with his penis;

• The first time [Petitioner] touched Lean09's genitals with his hand, she was wearing pajamas, and he told her that he was "[j]ust getting a feel for [her]";

• The first time [Petitioner] touched Lean09's genitals with his penis, he said nothing, and she wore nothing. He put her on his bed with her back to him, and he put his penis "inside [her]" vagina. "[H]e kept going until he stopped and told [her she] could leave";

• When Lean09 was "11ish," [Petitioner] and the girls moved to another house in Granbury, and the sexual abuse continued;

• [Petitioner] "made [Lean09] give him oral sex at that house" "[q]uite a few" times, and semen would come out of his penis and go on the bed, on the floor, and a few times, on her;

• [Petitioner] would call Lean09 "[B]eloved, beautiful, [and] other things like that," which made her feel "[a]wkward";

• Regarding his conduct, [Petitioner] "told [Lean09] that that's what God wanted and that's what God told him to do," and if she refused him, "God would put a curse on [her] and strike [her] down";

• The fifteen-year-old Lean09 testifying at trial no longer believed God wanted [Petitioner] to sexually abuse her and wanted her to submit to [Petitioner], but the "11ish" child had believed it;

• The sexual abuse did not happen every day or even every week;

• During this time, Lean09 and L.D. were taken by social workers to another state to testify in their mother's case; they were kept in a foster home;

• Despite having opportunities, Lean09 did not tell anyone in the other state what [Petitioner] was doing because she was afraid she would be separated from L.D.;

• Similarly, Lean09 did not tell CPS workers who visited her Granbury home about the sexual abuse;

16

- The sexual abuse continued when the girls returned to Granbury after their mother's trial;

- When she was a teenager, Lean09 told L.D. that [Petitioner] "had [her] touch him, and he touched [her]";

- L.D. confronted [Petitioner] the next day, which helped "[a] little bit"; the sexual abuse "slowed down [and] barely happened until [L.D.] moved out";

- After L.D. moved out, "[t]he sexual abuse started up again";

- [Petitioner] smoked marihuana fairly often and also baked it and put it in pills which he gave Lean09, who could not smoke because of her health;

- [Petitioner] also gave Lean09 alcohol;

- When [Petitioner] caused his penis to contact Lean09's genitals, caused her mouth to contact his penis, touched her genitals with his hand, and had her touch his penis, she was under fourteen years old, and those events occurred over a time period greater than thirty days.

### D. The State's Other Witnesses and the Recorded Phone Call Supported the Premise that [Petitioner] Had Sexually Abused Lean09.

L.D. testified:

- She was nineteen years old at the time of [Petitioner]'s trial, and Lean09 was fifteen;

- After their mother's arrest, [Petitioner] homeschooled the girls but not well;

- [Petitioner] never dated women his own age after their mother left;

- [Petitioner] had marihuana in the house and often pressured her to get it for him;

- When L.D. confronted [Petitioner] about sexually abusing Lean09, "[h]e said he understood why [L.D.] was confronting him, . . . that . . . he respected it[,] and he wouldn't do it . . . again";

17

- [Petitioner] never sexually abused L.D.;

- L.D. never witnessed the sexual abuse but did notice that [Petitioner] "liked [Lean09] to sleep on th[e] couch [in his bedroom] or in his bed with . . . him";

- L.D. never told CPS about [Petitioner] sexually abusing Lean09 because she did not want to be separated from her sister; and

- L.D. moved out in 2013 when she was seventeen years old.

Theresa Fugate, the Cook Children's Hospital nurse who performed Lean09's sexual assault exam, read her notes of the medical history Lean09 provided,

> Smart, pretty 15-year-old girl, who is made aware that she's here for a medical checkup, for a medical diagnosis and treatment. When asked why she was here today, [Lean09] stated, "Because of what my stepdad did." And I asked, "What did he do?" She said, "It started about four or five months after my mom went to jail in 2009. It started with just usual stuff, like showing me hisself naked and some touching. When I was around ten years old, he would have me touch him and rub him." Then I asked her, "Did anything ever come out of his penis?" She said, "Yes, it went on him or me, I don't remember. When I was 12 years old or 13 years old, he had sex with me, but only once, and he tried anally, but it didn't work." And I asked, "When was the last time he did anything?" "The last time he actually did anything, which was touching, was the late summer of 2014. He tried to touch me July 30th of this year [(2015)]. He started trying to talk me into it, then he grabbed me, but I punched him."

> . . . .

> "Then we went in his room, and the next day I think I called my sister, and she came to get me." And I asked her, "Did he ever give you any alcohol or drugs?" "Yes, I think when I was 14 years old, he gave me marijuana, not to smoke, he made them into pills, and he would give me alcohol starting around 13 years old."

In answering Fugate's "Specific Act Questions," Lean09 indicated that there was vaginal contact by penis and hand, penile-anal contact, oral copulation of [Petitioner] by her, masturbation or contact of [Petitioner] by her and of her by him, ejaculation, fondling, licking, and alcohol or drug use.

In the recorded phone call, [Petitioner] had several opportunities to deny that he had sexually abused Lean09, but he did not make any denials. Instead, he repeatedly stated that he was sorry and that he had not meant to hurt her. The recorded phone call also included the following content:

- [Petitioner] admitted that he "said and did some things [he] shouldn't have";

- [Petitioner] told Lean09 he would "do whatever it takes to keep [their] relationship good";

- In response to her question, "Why did you touch me when you did and do those things?" Appellant replied, "I'm sorry. I let myself fall in love with you. I'm sorry for hurting you. It wasn't my intention";

- In response to her statement that she "didn't want [him] to touch [her] that way," [Petitioner] replied, "I know";

- To Lean09's statements, "We can't have sex anymore" and "We can't do that anymore," [Petitioner] replied, "I understand" and "Alright";

- In response to her question whether God had said it was okay for [Petitioner] to have sex with her, he said that "[he] believe[d he] was in God's will," but he later admitted that God did not want him to fondle her; he had drunk too much and was weak.

Hood County District Attorney's Office Investigator Robert Young testified that:

- He listened in on the recorded phone call as he was recording it with the girls' consent;

- Within an hour or so of that call, he called the same number Lean09 had called and recognized [Petitioner]'s voice when he answered;

- Investigator Young advised [Petitioner] to come talk to him;

- Investigator Young arrested [Petitioner] pursuant to a warrant the day after the recorded phone call; and

- Investigator Young searched the home the following day, finding gas cans containing gas, matches, a lighter, a suicide note, marihuana, and assorted paraphernalia.

19

**E.      In His Testimony, [Petitioner] Admitted to Touching Lean09's Crotch on Two Separate Occasions, Months Apart, When She Was Younger Than Fourteen Years Old.**

In his testimony in the defense's case in chief, [Petitioner] claimed that the reception had been poor on the recorded phone call, and he had not always heard everything Lean09 had said during it. He denied having sex with Lean09, making her touch him, and being intoxicated while appearing at trial. He also denied that she had punched him. He admitted, however, that he had touched her crotch on two separate occasions months apart but near the time of her mother's trial. He insisted that he had been intoxicated and "[t]here was nothing sexual about it[,]" but he also admitted that touching Lean09 between her legs was not God's will. Conversely, he further testified that he had never touched Lean09 improperly or had sex with her. He tried to justify his recorded comments about falling in love with her by stating that he had fallen in love with her mother and her sister as well and was committed to them as his family.

**F.      The Evidence is Sufficient to Support [Petitioner]'s Conviction.**

[Petitioner]'s focus in his sufficiency issue on the conflicts in the evidence, Trial Counsel's alleged deficiencies, and the alleged inadmissibility of the evidence is misplaced. The jury, not this court, is the sole arbiter of the weight and credibility of the evidence, . . . , and when we measure the sufficiency of the evidence, we consider all of it, even those items improperly admitted, . . . .

Viewing the evidence in the light most favorable to the verdict, we conclude that it sufficiently supports [Petitioner]'s conviction. In fact, Lean09's testimony alone supports the verdict:

- Lean09 first touched [Petitioner]'s penis at his direction when she was nine years old, and that type of sexual conduct occurred "a few more times" in the Fort Worth house;

- When Lean09 was ten or eleven years old and [Petitioner] and the girls had moved to Granbury, that same conduct again occurred, and [Petitioner] also touched her genitals with his hand and with his penis and penetrated her vaginally with his penis once;

- At the second Granbury home, [Petitioner] forced Lean09 to "give him oral sex" "[q]uite a few" times; and

- All of the sexual acts [Petitioner] committed or caused—involving his penis on her genitals, her mouth on his penis, his hand on her

> genitals, and her hand on his penis—occurred when she was younger than fourteen years old and over a period of time that exceeded thirty days.

The statute requires only two acts of sexual abuse.

> Ignoring any discrepancies or conflicts, which were within the jury's exclusive power to resolve, . . . ., the other testimony and evidence also support the conviction. First, L.D.'s testimony confirms (1) [Petitioner] as the perpetrator based on Lean09's outcry to L.D. and (2) that the sexual abuse occurred before Lean09's fourteenth birthday. Second, Nurse Fugate's testimony corroborates Lean09's testimony about the multiple acts of sexual abuse [Petitioner] committed and about when the sexual abuse began and ended; Nurse Fugate's testimony also supports the paragraph in the indictment alleging penile-anal contact. Third, the recorded phone call indirectly supports Lean09's allegations because [Petitioner] apologized repeatedly, talked about falling in love with her, and did not deny sexual misconduct when she discussed the topic. Fourth, [Petitioner]'s own testimony supports the conviction because he admitted "touch[ing] her crotch on . . . two occasions" when he was intoxicated, and the jury could have properly rejected his claim that he had no sexual intent.

> Accordingly, based on the proper standard of review, we hold that the evidence is sufficient to support [Petitioner]'s conviction.

Mem. Op. 4–15 (footnotes and citations omitted).

The state court's decision comports with *Jackson* and is reasonable in light of the evidence at his trial. Petitioner is not entitled to relief under ground five.

## C.  Ground Six

Under his sixth ground, Petitioner claims that

> [d]efense counsel was ineffective, incompetent, inert and caused substantial prejudice to occure at pre trial, trial and post trial that rendered the proceedings unfair violating U.S. Const. Amend. 5th, 6th and 14th and due process.

Pet. 11, ECF No. 1.  In support, he merely states that the basis for the claim

> is to voluminous to be stated here and they are well founded within the provided record. The states adjudication was very unreasonable, it simply exhibited willfull blindness and obstruction of justice to this ground and all other grounds in this

21

petition.

*Id.*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Ordinarily, an ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington,* under which a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In *United States v. Cronic,* the Supreme Court created "a very limited exception to the application of *Strickland*'s two-part test," whereby prejudice is presumed "in situations that 'are so likely to prejudice the accused that the cost of litigating their effect in the particular case is unjustified.'" *Haynes v. Cain,* 298 F.3d 375, 380 (5th Cir. 2002) (quoting *United States v. Cronic,* 466 U.S. 648, 658 (1984)). The court identified three such situations, two of which Petitioner alluded to in his appellate brief. Appellant's Br. 19–29, ECF No. 23-16. Specifically, prejudice is presumed where there is a "complete denial of counsel" or where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic,* 466 U.S. at 659–60. In the latter situation, "prejudice is not presumed unless an attorney entirely fails to defend his client." *See Thomas v. Davis,* 968 F.3d 352, 355 (5th Cir. 2020), *cert. denied sub nom. Thomas v. Lumpkin,* ---S. Ct. ---, 2021 WL 2194926 (U.S. June 1, 2021) (No. 20-7616).

Petitioner raised ineffective-assistance-of-counsel claims on direct appeal and, relying on

*United States v. Cronic,* argued that he was constructively denied counsel because counsel was not only incompetent but inert and failed "to subject the prosecution's case to meaningful adversarial testing." Appellant's Br. 19–29, ECF No. 23-16; *Cronic,* 466 U.S. at 659. The appellate court, in the last reasoned opinion on the issue, addressed the claims as follows:

A. **[Petitioner] Must Prove by a Preponderance of the Evidence Both Deficient Representation by Trial Counsel and a Reasonable Probability that Without It, the Outcome of His Trial Would Have Been Different.**

[Petitioner] argues that this court should evaluate his claim under *United States v. Cronic, . . .,* rather than *Strickland v. Washington, . . . .* We disagree. The Texas Court of Criminal Appeals recently highlighted the difference between the two standards:

> In the usual case, an appellant, in order to obtain a reversal of his conviction on the ground of ineffective assistance of counsel, must demonstrate both deficient performance and prejudice. That is, he must demonstrate that: (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. However, if an appellant can demonstrate that defense counsel "entirely fail(ed) to subject the prosecution's case to meaningful adversarial testing," so that there was a constructive denial of the assistance of counsel altogether, then prejudice, because it is "so likely," is legally presumed. . . .

> In determining whether defense counsel "entirely fail(ed) to subject the prosecution's case to meaningful adversarial testing," we are guided by the following passage in *Cronic*:

>> [T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of advocate. The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the

23

> process loses its character as a confrontation between
> adversaries, the constitutional guarantee is violated.
>
> In the usual case in which an ineffective-assistance claim is made,
> "the record on direct appeal will not be sufficient to show that
> counsel's representation was so deficient and so lacking in tactical or
> strategic decisionmaking as to overcome the presumption that
> counsel's conduct was reasonable and professional."

Here, Trial Counsel filed a motion to substitute counsel on December 22, less than three weeks before the trial was scheduled. He filed a jury election, participated in voir dire, gave an opening statement, objected at trial, cross-examined the girls, directly examined [Petitioner], and gave closing arguments in the guilt phase and the punishment phase. We therefore do not presume prejudice, . . . .

> To establish ineffective assistance of counsel at trial, an appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. The issue for the performance prong is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, that is, a trial with a reliable result. In other words, appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. Ineffective assistance claims are usually best addressed by a postconviction writ of habeas corpus.

**B.     Our Review of Counsel's Performance Is Highly Deferential, with a Strong Presumption that It Is Not Deficient**.

> In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it."

**C.    Our Focus in Assessing Any Prejudice Caused by Counsel's Performance is Whether It Affected the Fundamental Fairness of the Trial.**

The ultimate focus of our inquiry into the effects of counsel's performance must be on the fundamental fairness of the proceeding in which the result is being challenged. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."

**D.    We Do Not Have to Address Both Prongs.**

There is no requirement that we approach the two-pronged inquiry of *Strickland* in any particular order or even that we address both components of the inquiry if the defendant makes an insufficient showing on one component.

**E.    [Petitioner] Alleges that Trial Counsel Rendered Deficient Performance.**

Specifically, [Petitioner] contends that Trial Counsel:

- Did not offer exculpatory evidence;
- Failed to subpoena any witnesses;
- Failed to investigate the girls' motives to lie and [Petitioner]'s background for truthfulness, for history of mental illness, or "as a potential victim of [Lean09's] family";
- "[D]id not put up a fight in court";
- Failed to formulate a defensive theory;
- Failed to defend [Petitioner];
- "[W]as well aware of [Petitioner's] incompetent mental state yet did nothing to help him";
- Told the venire panel that when he was a prosecutor, he "regularly put his friends on the jury in an attempt to secure unlawful convictions" ["but also admitted that it made no difference in the verdict because 'it was too big a deal to cheat to help your friend'"];
- Never brought up the possibility that the State allowed his "accusers" access to his home and that they could have destroyed exculpatory

25

         evidence;

- Did not cross-examine Nurse Fugate about the absence of physical evidence and did not object to her testimony;
- Did not object to the prosecutor's allegation that the female clothing found in [Petitioner]'s room was Lean09's;
- Did not develop the theory that the girls believed they would instantly acquire millions of dollars upon [Petitioner]'s death or incarceration;
- Did not cross-examine Investigator Young regarding his alleged perjury during grand jury proceedings or his alleged libel and defamation of [Petitioner] or object to his testimony;
- Did not impeach the State's witnesses;
- Did not suppress the recorded phone call;
- Objected only three times;
- Filed only one motion, and that was a motion to substitute counsel;
- Had only nine and a half days to prepare for trial;
- "Helped stack the jury with [his] friends . . . and the [district attorney's] team";
- Violated Texas Rule of Evidence 503 "with a clear conflict of interest";
- Told [Petitioner] that the trial court would not grant a continuance; and
- Lied to [Petitioner].

**F.     The Record Does Not Support [Petitioner]'s Claims of Deficiency**.

       [Petitioner] did not raise ineffective assistance of Trial Counsel in a motion for new trial and have a hearing, so all his claims lack support in the record.

       Trial Counsel participated in the case. He filed a motion to substitute and a jury election, participated in voir dire, opening and closing statements, and the taking of evidence, and filed a motion for new trial. His theory of the case at guilt-innocence was that the girls were lying, and he cross-examined them both, spending most of his time questioning Lean09. He objected to the admission of the recorded phone call and to L.D.'s testimony regarding Lean09's phone call asking L.D. to come get her. The six exhibits he offered were admitted in evidence. In questioning [Petitioner] in his case in chief, Trial Counsel elicited evidence that [Petitioner] had never had sex with Lean09, that [Petitionre] believed Lean09 was on drugs during the trial, and that [Petitioner] believed the girls' motive for reporting the sexual abuse to the police was L.D.'s desire for money.

       The record does not support [Petitioner]'s allegations that:

- He asked Trial Counsel to subpoena more than fifty witnesses;

- Trial Counsel failed to investigate;
- Exculpatory evidence existed;
- The jury pool was tainted;
- Trial Counsel helped "stack the jury";
- Trial Counsel had a "clear conflict of interest";
- Trial Counsel told [Petitioner] the trial court would not grant a continuance; or
- Trial Counsel lied to [Petitioner].

Regarding the remaining allegations, *first,* as we have already held, no suggestion of incompetency triggered an inquiry into [Petitioner]'s competency to stand trial, and there is no evidence that [Petitioner]'s mental state was such that Trial Counsel should have questioned [Petitioner]'s competency to stand trial. *Second*, Trial Counsel's admitting to the venire panel that as a prosecutor, he "used to sneak [his] friends on the jury" appears to serve the proper purpose of removing any jurors who might have been biased for the State because of their relationships with the prosecutors or judge. *Third,* Trial Counsel's failure to cross-examine Investigator Young and Nurse Fugate or to challenge the ownership of the panties found in [Petitioner]'s room and characterized by Lean09 as hers could have been a trial strategy designed to minimize the risk of the jury hearing even more incriminating evidence. *Fourth,* Lean09 consented to Investigator Young's listening in and recording the recorded phone call; the trial court's admission of it into evidence was therefore not clearly error.

Because [Petitioner] has failed to sustain his burden to show Trial Counsel's actions or inactions were not based on reasonable trial strategy, . . . he has failed to sustain his burden to show ineffective assistance of Trial Counsel.

Mem. Op. 25–33, ECF No. 24-2 (emphasis in original) (citations omitted).

Petitioner presents no clear and convincing evidence to rebut the state court's factual findings: thus, deferring to the state courts' factual findings, the state court's determination that *Cronic* was inapplicable in this case was not objectively unreasonable. Clearly, counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing, such that prejudice is presumed. *See Thomas,* 968 F.3d at 355. As the state court detailed in its thorough opinion, counsel actively advocated on Petitioner's behalf throughout trial.

Furthermore, the state court's application of *Strickland* was not objectively unreasonable.

Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, involve strategic and tactical decisions made by counsel, and/or would have required counsel to make frivolous motions or objections, all of which generally do not entitle a state Petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir. 1995) (providing actions of counsel during voir dire are generally considered a matter of trial strategy); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections"); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims based upon uncalled witnesses are disfavored and conclusory if unsupported by affidavits indicating the witnesses' willingness and availability to testify and the substance of the proposed testimony); *Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir. 1984) (providing whether to file pretrial motions is within the realm of trial strategy); *Youngblood v. Cain,* No. 5:14-CV-2880, 2015 WL 12745550, at *8 (W.D. La. Nov. 3, 2015) (providing "an attorney's choice of whether or not to make certain objections falls within the ambit of 'trial strategy'"); *Ngo v. Holland*, No. 4:13-CV-138-Y, 2013 WL

6284057, at *9 (N.D. Tex. Dec. 4, 2013) (providing "tactical and strategic choices made by counsel, including whether to cross-examine witnesses and to what extent, involve the exercise of professional judgment and are virtually unchallengeable on habeas review"). Even if Petitioner had established ineffective assistance of counsel in one or more respects, which he has not, assuming the jury believed the testimony of the child victim, he could not demonstrate that but for counsel's representation he would have been acquitted or that his sentence would have been significantly less harsh. Petitioner is not entitled to relief under ground six.

### D.  Judicial Bias

Under his eighth ground, Petitioner claims that

> [t]he trial court judge had judicial bias towards Petitioner thus rendering an unfair trial in an unfair tribunal, thus violating the "due process" clause and "equal protection of laws" rights of the U.S. Const. 14th Amend.

Pet. 13–14, ECF No. 1. Petitioner raised a judicial-bias claim on direct appeal, Appellant's Br. 46–49, 23-16, and the appellate court, in the last reasoned opinion on the issue and based solely on state law, addressed the claim as follows:

> [Petitioner] contends that the trial court exhibited bias against him by:
>
> • 	allowing Lean09 to testify after she allegedly did not raise her hand or speak when the trial court swore her in as a witness;
>
> • 	not inquiring into [Petitioner]'s competency to stand trial;
>
> • 	not remarking on [Petitioner]'s allegedly ineffective Trial Counsel; and
>
> • 	not attempting to cure the prosecutor's alleged misconduct or improper argument.
>
> Absent a clear showing of judicial bias, we presume that a trial court acted impartially.

The behavior [Petitioner] complains of here is not action or comments but inaction. In a slightly different context, the Texas Court of Criminal Appeals has explained, "[T]he responsibility of asserting forfeitable rights belongs to the litigants, and not the trial judge. . . . A court of appeals should not find error in a trial judge's inactivity when contemporaneous action is neither requested nor independently required." The trial court's not interceding during Lean09's alleged failure to take the oath and the prosecutor's alleged misconduct is therefore not error.

> However, the Court also held that
>
> [w]hen it comes to non-forfeitable rights, the legal responsibility of assuring compliance with these rights falls squarely upon the trial judge. And when these kinds of rights are at stake, a court of appeals may rightly find error in a trial judge's conduct, even when the parties do not complain at trial, because the law imposes upon the judge a duty that exists independently of the parties' decision to speak up.

That distinction does not afford [Petitioner] any relief here, though, because we have already held that the trial court did not abuse its discretion by not inquiring into [Petitioner]'s competency to stand trial and that [Petitioner] failed to satisfy his burden of proving ineffective assistance of Trial Counsel.

Mem. Op. 33–34, ECF No. 24-2 (citations omitted).

Deferring to the state court's application of state law, as the Court must, Petitioner fails to demonstrate that the state court's determination of the claim is contrary to, or an unreasonable application, of Supreme Court precedent regarding the matter. The constitutional "floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal . . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley,* 520 U.S. 899, 904–05 (1997). Judicial bias is not lightly established and court's ordinarily "presume that public officials have properly discharged their official duties." *Id.* at 909. Generally, the Supreme Court has recognized two types of judicial bias: actual bias and presumptive bias. *See Buntion v. Quarterman,* 524 f.3d 664, 672 (5th Cir. 2008). Presumptive bias occurs when a judge may not actually be biased, but has the appearance of bias such that "the probability of actual bias

30

. . . is too high to be constitutionally tolerable." *Withrow v. Larkin,* 421 U.S. 35, 47 (1975)). There are three situations in which the Supreme Court has found presumptive bias: (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints. *See Bigby v. Dretke,* 402 F.3d 551, 559 (5th Cir. 2005) (citing Supreme Court cases).

In this case, Petitioner failed to establish any actual bias directed at him by demonstrating "favoritism or antagonism" on the part of the trial judge such that fair judgment was impossible in his case. *Bracy,* 520 U.S. at 909. Nor is his case one resembling the cases in which the Supreme Court has found presumptive bias. Petitioner is not entitled to relief under ground eight.

### E.  Ground Nine

Under his ninth ground, Petitioner claims that

[t]here was information known to the court at pre-trial and trial sufficient to raise doubts about the defendant's competency, therefor requiring a Pate hearing. The court was under legal obligation to order a Pate hearing, yet it failed to do so, thus violating state and federal SCOTUS clearly established law, and "due process" and equal protection of law" rights see U.S. Const. Amend. 14th.

Pet. 14, ECF No. 1. Petitioner raised the claim on direct appeal, Appellant's Br. 6–16, ECF No. 23-16, and the appellate court, in the last reasoned opinion on the issue and based solely on state law, addressed the claim as follows:

[Petitioner] contends that the trial court erred by failing to sua sponte hold a competency hearing. "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." The Texas Court of Criminal Appeals recently reviewed how competency issues in criminal cases are triggered and then determined by our trial courts:

As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial. The Legislature has codified this due-process requirement by setting forth a substantive and procedural framework for making competency determinations to ensure that legally incompetent criminal defendants do not stand trial. Substantively, incompetency to stand trial is shown if the defendant does not have: "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." Procedurally, a trial court employs two steps for making competency determinations before it may ultimately conclude that a defendant is incompetent to stand trial. The first step is an informal inquiry; the second step is a formal competency trial.

We liberally construe [Petitioner]'s issue to complain that the trial court failed to conduct both steps—an informal inquiry and a formal competency trial.

**A.    We Review a Trial Court's Failure to Sua Sponte Informally Inquire into a Defendant's Competency to Stand Trial for an Abuse of Discretion.**

We review a trial court's failure to conduct an informal inquiry into a criminal defendant's competency to stand trial for an abuse of discretion. A trial court does not abuse its discretion absent a showing that its decision was arbitrary or unreasonable.

**B.    Any Credible Evidence Triggers the Trial Court's Sua Sponte Duty to Informally Inquire into a Defendant's Competency to Stand Trial.**

"An informal inquiry is called for upon a 'suggestion' from any credible source that the defendant may be incompetent." When "evidence suggesting" that a defendant in a criminal case "may be incompetent to stand trial comes to the attention of the [trial] court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." "Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by [Texas Code of Criminal Procedure] Article 46B.024 or on any other indication that the defendant is incompetent." The article 46B.024 factors are:

(1)    the capacity of the defendant during criminal proceedings to:

(A)    rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

32

      (B)     disclose to counsel pertinent facts, events, and states of mind;

      (C)     engage in a reasoned choice of legal strategies and options;

      (D)     understand the adversarial nature of criminal proceedings;

      (E)     exhibit appropriate courtroom behavior; and

      (F)     testify;

(2)     as supported by current indications and the defendant's personal history, whether the defendant:

      (A)     is a person with mental illness; or

      (B)     is a person with an intellectual disability;

(3)     whether the identified condition has lasted or is expected to last continuously for at least one year;

(4)     the degree of impairment resulting from the mental illness or intellectual disability, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner; and

(5)     if the defendant is taking psychoactive or other medication:

      (A)     whether the medication is necessary to maintain the defendant's competency; and

      (B)     the effect, if any, of the medication on the defendant's appearance, demeanor, or ability to participate in the proceedings.

## C.    [Petitioner] Relies on Evidence of His Alleged Mental State Months Before Trial.

[Petitioner] relies on his alleged pedophilia related to the offenses with which he was charged, his mental state during the short period after Lean09 left the home through the time of his arrest, and the State's use of evidence of his mental state at

33

a pretrial bond hearing.

After Lean09 left the home she shared with him, [Petitioner] sent her a series of emails. In one dated August 6, 2015, he stated, "Hello my love, I'm sorry I locked you out of your bank account. I was very hurt and angry when you ran away from home. Then pretty much deep dark depression after that." In an email sent on August 17, 2015—the day of the recorded phone call but after both it and Investigator Young's call to [Petitioner], the subject line read, "Life and death situation." In another email sent late that night, [Petitioner] wrote to Lean09, "Why have you betrayed God, yourself, me, [and all the pets,] and condemned us all to death from your curse, it is not right!"

Investigator Young arrested [Petitioner] on August 18, 2015, the day after both the recorded phone call and the call between the two men, and searched the home the following day. Investigator Young found inside the house several gas cans containing gas, matches, a lighter, and an undated, typed suicide note addressed to Lean09 and signed by [Petitioner]. The note provided,

> I am sorry that the day you left me I got angry at first then I became hurt that you left me, then I sank into a deep depression by Saturday morning. I then became overwhelmed with deep depression, deeper then I have ever felt before. I was consumed with thoughts of suicide. I fought them off for many days until God took them from me in an instant. I fought them off over the last two weeks but yesterday when the investigator for the DA's office called after you called me for closer [sic], all of the work I put in to stay alive went out the door. I had hope for a future where you would come back home and I could care for you again. Unfortunately you turned out to be just like all of the other women in my life, you just wanted to hurt me and use me then dump me like trash at the end, so I cannot live a life where I am just garbage to be tossed away by all of the people that I have loved for my whole life. I am done with life and you can know that you are responsible for my death and the death[s] of [the pets], our blood is on your hands and your soul. . . . You should bare [sic] all of the burden for my death. . . . I offered myself up to you and you rejected me, so here is the consequence of your actions. . . . I am going to Heaven and I will see you there . . . .

A handwritten note at the bottom of the letter stated, "I gusse [sic] you got your closuer! [sic] goodBye my Love! I Love you!"

About a month later, on September 22, 2015, at [Petitioner]'s pretrial bond reduction hearing, the prosecutor relied on the emails and letter described above and

pictures depicting the gas cans, matches, and lighter in cross-examining [Petitioner]. [Petitioner] admitted in the hearing that he was "very depressed" after Lean09 left. At the end of the hearing, the prosecutor argued that the case

> had a very profound impact on [Petitioner's] psyche. He . . . is suicidal, wrote these letters and . . . even took steps to carry out . . . his ideations of suicide with the gasoline and the matches and . . . the lighters to kill all the pets, and even talks about the victim as it relates to her life and how long it's going to be. . . . [A]s desperate as he is, . . . and [given] his frame of mind, . . . lowering this bond would be improper . . . .

**D.     The Trial Court Did Not Abuse Its Discretion by Not Informally Inquiring into [Petitioner]'s Competency to Stand Trial.**

These items, however—[Petitioner]'s alleged mental illnesses of pedophilia and depression, his alleged mental state at the time of his arrest, and the State's reliance on evidence thereof to argue against a bond reduction almost four months before trial, are not suggestions of incompetency to stand trial. "Criminal offenses frequently seem senseless, but the acts themselves do not necessarily equate to a suggestion of incompetence." We therefore reject [Petitioner]'s contention that the State's charging him with continuous sexual abuse of a child evidences his incompetency to stand trial. Further, the relevant time frame for determining competency is at the time of the proceedings. Finally, a defendant's mental illness, past or present, absent credible evidence that because of it, he lacks "(1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]," . . . "does not equate to a suggestion of incompetency." Thus, [Petitioner]'s alleged pedophilia, depression, and suicidal ideations—and the State's reliance on his depression and suicidal ideations in a pretrial bond hearing about a month after his arrest—do not suggest that he was incompetent to stand trial almost five months after his arrest.

Even in the bond hearing, [Petitioner] testified coherently, logically, and rationally and was responsive to questions asked of him. At the short December 1, 2015 arraignment hearing, [Petitioner] answered the two questions asked of him succinctly and clearly. Nothing in the record of the trial, which began on January 11, 2016, almost five months after [Petitioner]'s arrest, demonstrates any sign of incompetency. [Petitioner] chose to testify at the guilt-innocence phase of trial and did so extensively on both direct examination from Trial Counsel and cross-examination by the prosecutor. [Petitioner]'s testimony was rational, logical, and coherent. He testified about his mental state:

- He was depressed when he touched Lean09's crotch on two separate occasions;

- Afterward, he limited his alcohol and "got some things to help [him] get out of the depression";

- He was depressed and suicidal after Lean09 left; and

- His depression and suicidal tendencies had significantly improved since he had been in jail.

Accordingly, we conclude that the trial court did not abuse its discretion by failing to sua sponte conduct an informal inquiry into [Petitioner]'s competency to stand trial. Because nothing triggered an informal inquiry, a formal hearing was likewise not required in this case.

Mem. Op. 15–22, ECF No. 24-2 (citations omitted).

The state court's test for determining mental competency comports with Supreme Court precedent on the matter and nothing in the record raises a "bona fide doubt" as to Petitioner's competency—*i.e.,* that he was unable to understand the proceedings against him or to assist in his own defense. *See Pate v. Robinson,* 383 U.S. 375, 385 (1966); *Dusky v. United States,* 362 U.S. 402, 402 (1960). Petitioner is not entitled to relief under ground nine.

## VII.  CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 16th day of June, 2021.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**